IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LUXOTTICA USA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-9061 |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS and UNINCORPORATED | ) | |
| ASSOCIATIONS IDENTIFIED ON SCHEDULE | ) | |
| "A," | ) | |
| | ) | |
| Defendants | ) | |

**ANSWER TO COMPLAINT**

NOW COME the Defendants eBay seller IDs **g7178a** and **qhgypchyh2** ("Defendant"), by and through their attorney, Law Offices of Robins & Associates, LLC., and in response to Plaintiff Luxottica USA LLC's ("Plaintiff" or "Luxottica") complaint, states as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

**ANSWER:** Denied.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Luxottica's business within this Judicial District. Through at least the fully interactive commercial Internet websites operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit Luxottica products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Luxottica substantial injury in the State of Illinois.

**ANSWER:** Denied.

## II. INTRODUCTION

3. This action has been filed by Luxottica to combat online counterfeiters who trade upon Luxottica's reputation and the goodwill of the federally registered Ray-Ban trademarks by selling and/or offering for sale unauthorized and unlicensed counterfeit products featuring the Ray-Ban trademarks (the "Counterfeit Ray-Ban Products"). The Defendants create the Defendant Internet Stores by the hundreds or even thousands and design them to appear to be selling genuine Ray-Ban products, while actually selling Counterfeit Ray-Ban Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their massive counterfeiting operation. Luxottica is forced to file these actions to combat Defendants' counterfeiting of the registered Ray-Ban trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Ray-Ban Products over the Internet. Luxottica has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of the valuable Ray-Ban trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3, and therefore denies them.

## III. THE PARTIES

4. Plaintiff Luxottica USA LLC ("Luxottica") is based in Port Washington, New York and operates as a subsidiary of Luxottica Group SpA, which is headquartered in Milan, Italy. Luxottica USA LLC is the exclusive wholesale distributor of genuine Ray-Ban products in the United States and has the exclusive right to enforce the RAY-BAN trademarks in the United States.

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4, and therefore denies them.

5. For generations, the Ray-Ban brand has been the undisputed world leader in the field of sun and prescription eyewear products, including those which prominently display the famous, internationally recognized, and federally registered RAY-BAN trademarks (collectively, the "Ray-Ban Products").

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5, and therefore denies them.

2

      6. Ray-Ban Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design. Among the purchasing public, genuine Ray-Ban Products are instantly recognizable as such. In the United States and around the world, the Ray-Ban brand has come to symbolize high quality, and Ray-Ban Products are among the most recognizable eyewear in the world. Ray-Ban Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Sunglass Hut and high-end department stores, and through the official Ray-Ban.com website, which was launched in 1995 and began e-commerce sales in 2009.

      **ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6, and therefore denies them.

      7. Luxottica and its predecessors began using the RAY-BAN trademarks in 1937 and have continuously sold eyewear under the RAY-BAN and other trademarks (collectively, the "RAY-BAN Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the RAY-BAN Trademarks. Luxottica's use of the marks has also built substantial goodwill in and to the RAY-BAN Trademarks. The RAY-BAN Trademarks are famous marks and valuable assets. Ray-Ban Products typically include at least one of the registered RAY-BAN Trademarks.

      **ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7, and therefore denies them.

      8. Several of the RAY-BAN Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.[1]

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 650,499 | | FOR: SUNGLASSES, SHOOTING GLASSES, AND OPHTHALMIC LENSES, IN CLASS 26. |
| 1,080,886 | | FOR: OPHTHALMIC PRODUCTS AND ACCESSORIES – NAMELY, SUNGLASSES; EYEGLASSES; SPECTACLES; LENSES AND FRAMES FOR SUNGLASSES, EYEGLASSES, SPECTACLES – IN CLASS 9. |
| 1,093,658 | | FOR: OPHTHALMIC PRODUCTS |

---

[1] For ease of drafting, Defendant did not copy the designs or trademarks from Plaintiff's Complaint into this Answer.

|  |  |  |
|---|---|---|
|  |  | AND ACCESSORIES – NAMELY, SUNGLASSES; EYEGLASSES; SPECTACLES; LENSES AND FRAMES FOR SUNGLASSES, EYEGLASSES, SPECTACLES AND GOGGLES; AND CASES AND OTHER PROTECTIVE COVERS FOR SUNGLASSES, EYEGLASSES, SPECTACLES– IN CLASS 9. |
| 1,320,460 |  | FOR: SUNGLASSES AND CARRYING CASES THEREFOR, IN CLASS 9. |
| 1,490,305 |  | FOR: CLOTHING, NAMELY, T-SHIRTS, IN CLASS 25. |
| 1,726,955 |  | FOR: FOR: BAGS; NAMELY, TOTE, DUFFLE AND ALL PURPOSE SPORTS BAGS, IN CLASS 18. FOR: CLOTHS FOR CLEANING OPTHALMIC PRODUCTS, IN CLASS 21. FOR: CLOTHING AND HEADGEAR; NAMELY, HATS, IN CLASS 25. |
| 2,718,485 |  | FOR: GOODS MADE OF LEATHER AND IMITATION LEATHER, NAMELY, WALLETS, CARD CASES FOR BUSINESS CARDS, CALLING CARDS, NAME CARDS AND CREDIT CARDS, IN CLASS 18. FOR: CLOTHING FOR MEN AND WOMEN, NAMELY, POLO SHIRTS; HEADGEAR, NAMELY, BERETS AND CAPS. |
| 3,522,603 |  | FOR: SUNGLASSES, |

|  |  | EYEGLASSES, LENSES FOR EYEGLASSES, EYEGLASSES FRAMES, CASES FOR EYEGLASSES, IN CLASS 9. |
|---|---|---|

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies them.

9. The above registrations for the RAY-BAN Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the RAY-BAN Trademarks constitute *prima facie* evidence of their validity and of the exclusive right to use the RAY-BAN Trademarks pursuant to 15 U.S.C. § 1057 (b). Attached hereto as **Exhibit 1** are true and correct copies of the federal trademark registration certificates for the trademarks included in the above table.

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies them.

10. The RAY-BAN Trademarks are distinctive when applied to the Ray-Ban Products, signifying to the purchaser that the products come from Luxottica and are manufactured to Luxottica's quality standards. Whether Luxottica manufactures the products itself or contracts with others to do so, Luxottica has ensured that products bearing the RAY-BAN Trademarks are manufactured to the highest quality standards.

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies them.

11. The RAY-BAN Trademarks are famous marks, as that term is used in 15 U.S.C. §1125(c)(1), and have been continuously used and never abandoned.

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, and therefore denies them.

12. Luxottica has expended substantial time, money, and other resources in advertising and promoting the RAY-BAN Trademarks. In fact, Luxottica has expended millions of dollars annually in advertising, promoting and marketing featuring the RAY-BAN Trademarks. Ray-Ban Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the RAY-BAN Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Luxottica. Ray-Ban Products have become among the most popular of their kind in the U.S. and the world. The RAY-BAN Trademarks have achieved tremendous fame and recognition which has only added to

the inherent distinctiveness of the marks. *Id.* As such, the goodwill associated with the RAY-BAN Trademarks is of incalculable and inestimable value.

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore denies them.

13. Genuine Ray-Ban Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Ray-Ban brand.

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and therefore denies them.

14. Since at least as early as 2009, genuine Ray-Ban Products have been promoted and sold at the official Ray-Ban.com website. Sales of Ray-Ban Products via the Ray-Ban.com website are significant. The Ray-Ban.com website features proprietary content, images and designs exclusive to the Ray-Ban brand.

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and therefore denies them.

15. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Ray-Ban Products to consumers within the United States, including the State of Illinois.

**ANSWER**: Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, with respect to any defendant other than itself. Defendant admits that it is a resident of the People's Republic of China, and that Defendant conducts business over the Internet using commercial websites and online marketplaces. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15, and therefore denies them.

16. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the RAY-BAN Trademarks in the same

transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Luxottica to learn Defendants' true identities and the exact interworking of their massive counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Luxottica will take appropriate steps to amend the Complaint.

**ANSWER**:   Denied.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The overwhelming success of the Ray-Ban brand has resulted in its significant counterfeiting. Consequently, Luxottica regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Luxottica has identified thousands of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit Ray- Ban Products to consumers in this Judicial District and throughout the United States. Despite Luxottica's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores, which generate massive profits selling Counterfeit Ray-Ban Products. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

**ANSWER**:   Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17, and therefore denies them.

18. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Ray-Ban Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the RAY-BAN Trademarks into the URL, and the Defendant Internet Stores often include copyright-protected content, images, and product descriptions on the websites to make it very difficult for consumers to distinguish such counterfeit sites from an authorized retailer. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. The Defendants have not been licensed or otherwise authorized to use any of the RAY-BAN Trademarks, and none of the Defendants are authorized retailers of genuine Ray-Ban Products.

7

**ANSWER**:   Denied.

19.  Defendants also deceive unknowing consumers by using the RAY-BAN Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Ray-Ban Products.  Additionally, upon information and belief, defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Ray-Ban Products.  Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.  As such, Luxottica also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit Ray-Ban Products.

**ANSWER**:   Denied.

20.  Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.  For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states.  Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information.  On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

**ANSWER**:   Denied.

21. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names.  In addition, Counterfeit Ray-Ban Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Ray-Ban Products were manufactured by and come from a common source and that Defendants are interrelated.  The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from the official Ray-Ban.com website.

**ANSWER**:   Denied.

8

22. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

**ANSWER**: Denied.

23. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Luxottica's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal Accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

**ANSWER**: Denied.

24. Defendants, without any authorization or license, have knowingly and willfully used and continue to use the RAY-BAN Trademarks in connection with the advertisement, offering for sale, and sale of Counterfeit Ray-Ban Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, each Defendant has sold Counterfeit Ray-Ban Products into the United States, including Illinois.

**ANSWER**: Denied.

25. Defendants' use of the RAY-BAN Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Ray-Ban Products, including the sale of Counterfeit Ray-Ban Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Luxottica.

**ANSWER**: Denied.

## COUNT I

## FALSE DESIGANTION OF ORIGIN (15 U.S.C. § 1125(a))

26. Luxottica hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25.

**ANSWER:** Defendant repeats and incorporates the admissions and denials of paragraphs 1 through 25 above as if fully set forth herein. Except as expressly admitted, Defendant denies the remaining allegations of paragraph 26.

27. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Ray-Ban Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Luxottica or the origin, sponsorship, or approval of Defendants' Counterfeit Ray-Ban Products by Luxottica.

**ANSWER**: Denied.

28. By using the RAY-BAN Trademarks on the Counterfeit Ray-Ban Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Ray-Ban Products.

**ANSWER**: Denied.

29. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Ray-Ban Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

**ANSWER**: Denied.

30. Luxottica has no adequate remedy at law and, if Defendants' actions are not enjoined, Luxottica will continue to suffer irreparable harm to its reputation, and the goodwill of the Ray-Ban brand will continue to be eroded.

**ANSWER**: Denied.

## COUNT II

### CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING ANY OF THE RAY-BAN TRADEMARKS

31. Luxottica hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

**ANSWER**: Denied.

32. Luxottica is the exclusive wholesale distributor of genuine Ray-Ban Products in the United States and has the exclusive right to enforce the RAY-BAN Trademarks in the United States. The registrations for the RAY-BAN Trademarks (**Exhibit 1**) are in full force and effect.

Additionally, the RAY-BAN Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

**ANSWER**:   Denied.

33.  Upon information and belief, Defendants have acted with bad faith intent to profit from the unauthorized use of the RAY-BAN Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the RAY-BAN Trademarks.

**ANSWER**:   Denied.

34.  Defendants have no intellectual property rights in or to the RAY-BAN Trademarks.

**ANSWER**:   Denied.

35.  Defendants' actions constitute willful cybersquatting in violation of  §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

**ANSWER**:   Denied.

36.  Luxottica has no adequate remedy at law, and the registration and use of the Defendant Domain Names has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Luxottica.

**ANSWER**:   Denied.

## COUNT III

## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510, et seq.)

37.  Luxottica hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 36.

**ANSWER**:   Denied.

38.  Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Ray-Ban Products as those of Luxottica, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Ray-Ban Products, representing that their products have Luxottica's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

**ANSWER**:   Denied.

39. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

**ANSWER**: Denied.

40. Luxottica has no adequate remedy at law, and Defendants' conduct has caused Luxottica to suffer damage to its reputation and erosion to the goodwill of the RAY-BAN Trademarks. Unless enjoined by the Court, Luxottica will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**ANSWER**: Denied.

## PRAYER FOR RELIEF

WHEREFORE, the Defendant request that the Court enter judgment in its favor and against Plaintiff as follows:

1) Denying all relief that Plaintiff seeks in its Complaint;

2) Dismissing Plaintiffs' Complaint against Defendant with prejudice;

3) Declaring that Defendant has not infringed any valid trademark rights of Plaintiff;

4) Declaring that the trademark registrations asserted against Defendant are invalid and;

5) Awarding any other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In according with Rule 38 of the Federal Rules of Civil Procedure, the Defendant requests a jury trial of all issues that may be tried to a jury.

    Respectfully Submitted,

    **Law Offices of Robins & Associates**

    /s/ Michael J. Robins
    Michael J. Robins

Law Offices of Robins & Associates
33 N. Dearborn, Suite 500
Chicago, Illinois 60602
(312) 641-9500
Attorney No. 6200303

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 28th day of January, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                              **Law Offices of Robins & Associates**

                                              /s/ Michael J. Robins
                                              Michael J. Robins

Law Offices of Robins & Associates
33 N. Dearborn, Suite 500
Chicago, Illinois 60602
(312) 641-9500
Attorney No. 6200303