IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LUXOTTICA USA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-9061 |
| | ) | |
| THE PARTNERSHIPS and UNINCORPORATED | ) | Judge Harry D. Leinenweber |
| ASSOCIATIONS IDENTIFIED ON | ) | |
| SCHEDULE "A," | ) | Magistrate Judge Daniel G. Martin |
| | ) | |
| Defendants. | ) | |
| | ) | |

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND A STATUTORY DAMAGES AWARD**

Dongfeng Zhu, owner of Defendant eBay stores *g7178a* and *qhgypchyh2*, sold $372 worth of counterfeit Ray-Ban sunglasses to buyers in the United States. Mr. Zhu is not a manufacturer. He is a 38-year-old Chinese national who purchases items locally in China and re-sells them on eBay for a small profit. Mr. Zhu lives in an apartment with his wife, son and parents. Mr. Zhu operates a number of eBay stores, but only two of them ever sold the accused products. Most of Mr. Zhu's sales are *not* shipped to the United States.

Upon receiving notice of this matter, Mr. Zhu immediately ceased sale of the accused sunglasses, and retained United States counsel to resolve the matter. Mr. Zhu has voluntarily conceded liability, to ensure prompt and efficient resolution of this matter, and to minimize costs and fees for both parties.

Despite Mr. Zhu's cooperation, and the miniscule amount of damages in this case, Plaintiff is asking for statutory damages that are over *four hundred times* the total value of the accused products at issue in this case. Throughout settlement discussions, Plaintiff's settlement

1

demands appear to have been dictated, not by the facts of this case, but by the amount of money in Mr. Zhu's PayPal accounts. Plaintiff's counsel covets these frozen accounts, despite the fact that Plaintiff's counsel is well aware that most of the funds in Mr. Zhu's accounts do *not* come from the sale of the accused sunglasses, and that most of the accounts Plaintiff has frozen have *nothing* to do with the accused sunglasses. Plaintiff has tried to use these improperly frozen financial accounts as leverage against Defendants, to secure a greater settlement amount than Plaintiff is entitled to under the law. The Court should reject Plaintiff's heavy-handed tactics here, award statutory damages of no more than $7,440 (representing an award of 20 times the total products at issue in this case), and decline to award attorneys' fees.

## I.  STATEMENT OF MATERIAL UNDISPUTED FACTS

Dongfeng Zhu operates two eBay stores, *g7178a* and *qhgypchyh2*, through which he sold a small number of purported Ray-Ban® sunglasses. (Ex. A and B, Screenshots of accused eBay stores.) Mr. Zhu did not manufacture these sunglasses; he merely obtained them from another seller and then re-sold them on eBay for a small markup. Though the sunglasses appear to bear the Ray-Ban® mark, Mr. Zhu did not describe the sunglasses as Ray-Ban® sunglasses in his eBay listing. (Exs. A, B.) Mr. Zhu's eBay feedback ratings, which were publicly available to Plaintiff and its counsel at the outset of this case, confirm that his sales of the accused sunglasses comprised a small portion of his overall sales. (Ex. N.)

At the outset of this case, Plaintiff sought an asset freeze order directing PayPal to "restrain and enjoin" any accounts "connected" to Mr. Zhu or eBay stores *g7178a* and *qhgypchyh2*. (Dkt. 46, Temporary Restraining Order.) The Temporary Restraining Order did not provide any definition of "connected," and neither Plaintiff nor PayPal have provided any explanation as to how PayPal determined certain PayPal accounts to be "connected" to Mr. Zhu or to eBay stores *g7178a* and *qhgypchyh2*. Plaintiff brought the order to PayPal, who then froze

the following seven accounts:

| Name | Account Number | Email | Balance / Total Value |
|---|---|---|---|
| Zhu Dong Feng | 1701724984723929641 (Ex. C.) | dongfeng.zhu15925976168@gmail.com; qhgypc6@163.com; 342738720@qq.com; qhgypc7@163.com; qhgypc8@163.com; qhgypc9@163.com. | $ 11,933.71 USD<br>$     320.76 AUD<br>$  1,049.95 CAD<br>€     325.96 EUR<br>£     978.90 GBP<br>_____<br>$ 14,968.43 USD |
| Huang Qianhong | 1495625425788491214 (Ex. D.) | qhh15925976168@163.com | $  4,050.94 USD<br>€     100.23 EUR<br>£  2,301.96 GBP<br>_____<br>$  7,695.14 USD |
| Chen Kun | 1759000428565414507 (Ex. E.) | ck20110579@163.com | $     241.20 USD<br>$       67.35 AUD<br>€     122.46 EUR<br>£     739.40 GBP<br>_____<br>$  1,578.25 USD |
| Xu An Yuan | 1810533526429432120 (Ex. F.) | hlcy0579@163.com | $  3,593.95 USD<br>$        0.00 AUD<br>$        0.10 CAD<br>€     596.31 EUR<br>£     690.80 GBP<br>_____<br>$  5,379.98 USD |
| Huang Shu Zhan | 1991681814984018848 (Ex. G.) | qtl0579@163.com | $  5,978.71 USD<br>$        0.00 AUD<br>€       56.36 EUR<br>£  1,699.19 GBP<br>_____<br>$  8,639.76 USD |
| Zhang Jian Feng | 2117311827601817767 (Ex. H.) | zjf20130579@163.com | $  2,589.17 USD<br>$       34.91 AUD<br>$        0.00 CAD<br>€        0.00 EUR<br>£  3,745.04 GBP<br>_____<br>$  8,331.15 USD |
| Huang Yu Hong | 1266070637351133259 (Ex. I.) | hyh20110579@163.com | $ 11,386.51 USD<br>$     126.50 AUD<br>$        2.11 CAD |

|  |  |  | € 961.43 EUR £ 9,841.28 GBP |
|  |  |  | $ 27,715.98 USD |

PayPal provided Plaintiff's counsel with account summaries for each of these accounts. (See Exs. C-I, PayPal Account Summaries Obtained from PayPal by Plaintiff's Counsel.) These account summaries do not show any connection between these accounts and eBay stores *g7178a* and *qhgypchyh2*. Rather, they reveal that PayPal deemed these accounts "connected" to Mr. Zhu solely on the basis of a common IP address, mailing address, or other loose similarity.

Mr. Zhu does not contest that the first two accounts listed above are associated with eBay stores *g7178a* and *qhgypchyh2*. But the other PayPal accounts have nothing to do with those eBay stores, or the accused sunglasses. PayPal itself has confirmed this, and Plaintiff has not provided any evidence to the contrary.

Mr. Zhu received notice of this lawsuit on December 18, 2014, and immediately stopped selling the accused products. Mr. Zhu then retained U.S. counsel and immediately directed counsel to reach out to Plaintiff's counsel to negotiate an appropriate settlement. (Ex. J, January 9, 2015 Horwitz email to Gaudio.) Acting on the advice of counsel, Mr. Zhu contacted PayPal and obtained a complete record of sales of the accused sunglasses. (Ex. L, PayPal Emails and Translations.) Mr. Zhu attempted to obtain a record of *all* transactions, but PayPal resisted, claiming that it would take more than 30 minutes just to download transactions relating to the accused items. (Id.) PayPal confirmed that *all* of Defendant's sales of the accused sunglasses went through PayPal account number 1701724984723929641, with the exception of a *single* pair of accused sunglasses which was processed through PayPal account 1495625425788491214. (Id.) PayPal did not identify *any* other transactions from *any* other PayPal account. (Id.)

Plaintiff's counsel has been aware of PayPal's determination that these are the only two

4

account numbers that received payment for the accused products since at least January 9, 2015, when Mr. Zhu's counsel forward the PayPal emails and spreadsheet to Plaintiff's counsel. (Ex. J, January 9, 2015 Horwitz email to Gaudio; Ex. M, January 15, 2015 Horwitz email to Gaudio.) Plaintiff could have subpoenaed transaction records from PayPal if it had any reason to believe the information that Defendants obtained from PayPal was in any way incomplete. Plaintiff's counsel issued no such subpoena.

The undisputed PayPal transaction records show that Defendants sold a small number of the accused sunglasses. (Ex. K, PayPal Transaction Records.) There are a total of 88 transactions – 87 shown on the spreadsheet of Ex. K, and an additional transaction described in the email of Ex. L. These transactions show that Defendant consummated sales of approximately 106 pairs of the accused sunglasses.[1] Defendant's total *worldwide revenue* from these products is approximately $820. Most of these sales did not occur in the United States; only 36 of the 87 transactions listed in the spreadsheet of Ex. K are sales directed to the United States, comprising $372 of the total $820 in sales. (Ex. K, Rows 52-87.) The table set forth above, as well as Exhibits C-I, confirm that the frozen PayPal accounts include substantial foreign currency, further illustrating that many of the sales at issue did not occur in the United States.

Plaintiff has not offered into evidence any foreign trademark registrations, and Plaintiff's Complaint does not assert infringement of foreign trademarks.

## II. ARGUMENT

The Court should award statutory damages in the amount of no more than $7,440. This

---

[1] Plaintiff contends that Defendant sold a little over 200 pairs of the accused sunglasses, pointing to the figures on Defendant's eBay storefronts. (Exs. A, B.) But a transaction initiated over eBay is not necessarily consummated; the PayPal transaction records are the more accurate record, as they reflect actual dollars received.

figure is more than *twenty times* the amount of *total revenue* Defendants obtained from the sale of the counterfeit Ray-Ban sunglasses to consumers in the United States. As set forth below, this figure is more than adequate to compensate Plaintiff for the alleged infringement, provides substantial deterrent value to Defendant, and addresses Defendant's willfulness while simultaneously recognizing Defendants' good-faith efforts to reach an appropriate resolution to this case.

### A. The asset frozen in this case should be limited to a single PayPal account.

#### 1. Plaintiff's counsel knowingly, and improperly, sought an overbroad asset freeze.

It is well-settled that the Court's authority to freeze assets is limited to those assets reasonably believed to be the proceeds of the sale of counterfeit goods. The Court may *not* freeze assets solely for the purpose of preserving a party's right to recover damages. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999). Rather, the Court may only freeze assets to the extent it is necessary to preserve a party's right to *equitable* relief. *Id.* at 325 (*citing Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Thus, the Court may issue an asset freeze to the extent it is necessary to preserve the Plaintiff's right to an accounting, but may *not* freeze assets for the purpose of preserving Plaintiff's claim for statutory damages, which are legal, not equitable, in nature. *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-civ-6283-AJN, 2012 WL 5265727, at *6 (S.D.N.Y. Oct. 24, 2012) (collecting cases).

The decision in *Klipsch* is instructive. There the court initially issued a $2 Million asset freeze. *Klipsch*, 2012 WL 5265727 at *1. The defendant submitted evidence that only $691.70 worth of accused goods were sold into the United States, and that $6,346.40 worth of accused goods were sold worldwide. *Id.* at *2. Like Mr. Zhu, the defendant in *Klipsch* voluntarily

provided this information, even though the plaintiff had only provided evidence of the sale of a single item. *Id*. at *3. The *Klipsch* court concluded that its authority to freeze assets was limited to preserving an equitable accounting of the defendant's profits. *Id*. at *4. Further, the *Klipsch* court noted that the defendant's PayPal accounts contained funds from "myriad worldwide sales" and rejected the plaintiff's attempt to freeze all of those funds simply because they were intermingled with "modest proceeds from the sale of counterfeit goods [which] passed thorugh that account at a prior time." *Id*. at *9. In view of these findings, the *Klipsch* court placed a $20,000 limit on its asset freeze order. *Id*. at *10.

Plaintiff's counsel (who Defendant believes is working on a contingency basis) has insisted on maintaining an asset freeze on entire *accounts* that are unrelated to the accused counterfeit goods. Plaintiff's counsel's sole purpose in refusing to unfreeze these accounts has been to obtain unfair and inappropriate leverage over Defendant by holding hostage funds which Plaintiff's counsel was never entitled to freeze in the first place.

Plaintiff's counsel is well aware that the asset freeze in this case has swept in funds far beyond the Court's authority to freeze assets. Plaintiff's counsel is highly experienced in seeking these types of asset freezes, as it is a matter of public record that Plaintiff's counsel has sought and obtained many such orders. As a result, Plaintiff's counsel is intimately familiar with how PayPal determines whether various PayPal accounts are "connected" to a Defendant or eBay store. Further, it is clear from Exhibits C through I, which Plaintiff obtained from PayPal, that PayPal's criteria for determining whether two accounts are "connected" may be as simple as determining whether the two accounts were ever accessed from the same IP address.

This is plainly not an appropriate method for determining whether an account is related to the sale of counterfeit goods. Plaintiff has the burden of proving that assets it seeks to restrain

are likely the proceeds of the sale of counterfeit goods. Through its extensive experience and history working with PayPal, Plaintiff's counsel knows full well that asking PayPal to freeze any account "connected" to an individual will result in the freezing of accounts of individuals who are entirely unconnected to the accused counterfeit products. For example, if two people share the same apartment, and one of them is accused of selling counterfeit goods, Plaintiff's proposed asset freeze order will result in *both* residents of that apartment having their PayPal accounts frozen, because they share an IP address and a physical address. Plaintiff's counsel is also well aware that this will occur *regardless of whether the second person has any connection to the alleged counterfeit goods*.

Plaintiff's counsel is fully aware of the wide net it is casting, and that its requested asset freeze order is highly likely to sweep up accounts which do *not* contain the proceeds of the sale of counterfeit goods. And in this instance, Plaintiff's counsel is aware that the asset freeze *has* in fact swept up accounts wholly unrelated to the accused products, because PayPal itself only identified *two* accounts which received funds from the sales of these products. (Exs. K, L.) Yet Plaintiff's counsel refuses to unfreeze these accounts, and then adds insult to injury by attempting to use these inappropriately frozen funds as leverage to extort settlements disproportionate to the any realistic damages figure.

PayPal has searched its records and determined that account nos. 1759000428565414507, 1810533526429432120, 1991681814984018848, 2117311827601817767, and 1266070637351133259 (the last five accounts in the chart above) do *not* contain any transactions relating to the alleged counterfeit goods. (Exs. K, L.) These accounts contain approximately $50,000 in assets wholly unconnected to the alleged counterfeits in this case. The Court should immediately lift the asset freeze relating to these accounts, regardless of the outcome of

Plaintiff's motion, and disregard the funds in these accounts entirely in assessing statutory damages.

The *only* two accounts that have any bearing to this case (one of which contains only a *single* transaction) are account numbers 17017249847239296 41 and 1495625425788491214 (the first two in the table above). These two accounts hold a combined total of $22,663.57, including foreign currency, the vast majority of which are proceeds from the sale of myriad other goods that have nothing to do with the counterfeiting allegations in this case.

### 2. The Court does not have jurisdiction over foreign sales.

The Court should similarly disregard all foreign currency and transactions in assessing statutory damages. Plaintiff is not asserting infringement of foreign trademarks – or even asserting that it *has* foreign trademark rights. The only trademark registrations Plaintiff has provided to the Court are U.S. trademark registrations. Based on the record before this Court, Mr. Zhu cannot be held liable for selling any "Ray-Ban" products to countries other than the United States. 15 U.S.C. § 1114(a) (requiring use "in commerce" as prerequisite to infringement); *Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 598 (E.D. Va. 2013), appeal dismissed (Oct. 29, 2013) (declining to exercise jurisdiction over acts of infringement allegedly occurring in the UK). As set forth in the transaction records provided by PayPal, only 36 of 88 total transactions – just 40.9% – were directed to the United States. Defendants' *total* sales to the United States are $372.

### 3. The Court should limit the asset freeze to no more than $7,440

Before addressing statutory damages, the Court should first address the scope of the asset freeze entered in this case. It is necessary for the Court to address this issue *regardless* of what the Court decides on statutory damages, because it appears that Plaintiff's counsel misled the Court into issuing an asset freeze well beyond the scope of the Court's limited equitable powers.

As is clear from PayPal's *own* search of its records, only two of the seven accounts frozen in this case received proceeds of the sale of accused products. The five accounts which never received any funds from the sale of the accused products should be immediately unfrozen. Of the two remaining accounts, Account Number 14956254257884491214 only contained funds from the sale of a *single* pair of accused sunglasses. The vast majority of the $7,695.14 value in this account has nothing to do with the accused products. This account should be unfrozen in its entirety.

Finally, Account Number 17017249847239296641 contains $14,958.43 in value. Only $11,933.71 of that amount is in U.S. Dollars. Further, only about $372 ever passed through this account at some point in time. The remaining funds in this account are the proceeds of the sales of other goods, as conclusively shown by PayPal's own summary of the sales of the accused products (Exs. K, L), as well as the feedback ratings associated with the two eBay stores at issue.

To the extent the Court permits *any* asset freeze to remain in place, that asset freeze should be limited to no more than $7,440 – which is *twenty times* the total *revenue* from the accused products at issue in this case, and more than adequate to satisfy the Court's interests in preserving any equitable accounting of profits.

**B.     The numbers available to the parties suggest a low statutory damages award.**

It is worth noting that the *purpose* of statutory damages is to relieve trademark holders of the burden of proving actual damages or lost profits; those measures of damages are often difficult to prove in counterfeiting cases due to the Defendants' destruction of evidence and/or failure to cooperate in discovery. *See, e.g., F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 232, 73 S. Ct. 222, 225, 97 L. Ed. 276 (1952) (*citing Douglas v. Cunningham*, 294 U.S. 207, 209, 55 S. Ct. 365, 366, 79 L. Ed. 862 (1935)) (discussing copyright statutory damages). A

number of courts have (sensibly) held that statutory damages must bear "some relation" to the actual infringement. *Coach, Inc. v. Ocean Point Gifts*, No. 09-4215-JBS, 2010 WL 2521444, at *8 (D.N.J. June 14, 2010). The Seventh Circuit's standard for awarding statutory damages confirms that Courts should consider "the difficulty or impossibility of proving actual damages" in assessing statutory damages. *Chi–Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir.1991). In this case, that factor suggests a *low* statutory damages award because, unlike other counterfeiting cases, the parties have a complete record of *all* of the sales of the accused products.

In many cases, including most of the cases Plaintiff cites in its brief, counterfeiting defendants have hidden or destroyed evidence, making an accounting of the total sales of counterfeit goods impossible. For example, a typical "retail" counterfeiting case may result in a handful of counterfeit products. In those cases the amount of counterfeit goods seized represents only a "snapshot" in time, and the Court must estimate the full scope of the Defendant's counterfeiting activities, considering the likelihood that the counterfeiting defendant in those cases has actually sold many, many more goods than he or she was caught with.

In cases like *this* one, however, concerns regarding "missing" sales of counterfeit goods are absent. Every one of Mr. Zhu's sales has, by definition, a computerized record. Those computerized records are in the possession of a third party – PayPal – which has no particular stake in this litigation. Mr. Zhu has provided his *complete* records of sales to the Plaintiff, and Plaintiff has made no effort to obtain anything further from PayPal. There simply is no dispute that Mr. Zhu's sales records are what PayPal says they are – a complete accounting of Mr. Zhu's sales of the accused sunglasses. These total sales are a little over $800 *worldwide*, and only $372 in the United States. Accordingly, it is possible to calculate Plaintiff's *actual* damages with some certainty. Setting aside Defendants' cost of purchasing the accused products, and setting

aside questions of whether consumers who purchased sunglasses from Defendants would have ever purchased sunglasses from Plaintiff, Plaintiff's total, recoverable lost sales are $372. *Trebling* these lost sales for willfulness yields $1,116.

### C. Mr. Zhu's cooperation suggests a low statutory damages award.

In order to expedite this case, be respectful of the Court's time, and minimize *both* sides' costs and fees, Mr. Zhu has stipulated to liability and willfulness. Mr. Zhu's willingness to stipulate to willfulness is not a concession that Mr. Zhu's sale of counterfeit goods was either substantial or done with knowledge that sale of these goods in the United States would be illegal. Rather, Mr. Zhu's willingness to stipulate to willfulness is a recognition that the products themselves bore the Ray-Ban® mark, that they were substantially cheaper than genuine Ray-Ban® products, and that if this case were to go to trial the price differential alone may form a basis for concluding that Mr. Zhu "should have known" that the accused products were counterfeit.

Mr. Zhu has cooperated with every stage of this case, *including* stipulating to the question of willfulness. Mr. Zhu voluntarily obtained sales records from PayPal and provided them to Plaintiff's counsel. Mr. Zhu has taken no steps to drag out or lengthen this litigation. These affirmative efforts on Mr. Zhu's part mitigate any effect his "willfulness" may have on the Court's assessment of statutory damages.

Further, there are degrees of willfulness. In many of the high-dollar cases cited by Plaintiff, the Defendants sold thousands of goods, or engaged in a larger counterfeiting conspiracy. There is no such evidence in this case.

### D. A statutory damages award of $7,440 is sufficient to deter Mr. Zhu, and others, from similar future conduct.

Given Mr. Zhu's cooperation in this case, and the lack of uncertainty surrounding the

scope of Mr. Zhu's sales of the accused products, a statutory damages award of $7,440 is more than sufficient to deter Mr. Zhu from further infringement. This award is *twenty times* Mr. Zhu's *total* revenue from the U.S. sales of the accused counterfeit products. In addition to this statutory damages amount, Mr. Zhu will have paid his U.S. counsel at least that much. Thus, Mr. Zhu will be out-of-pocket over $14,000 for goods for which his total *revenue* is $372. This is more than adequate to render *any* business-person wary of ever selling potentially counterfeit goods. Mr. Zhu will ensure, from now on, that any goods whose price is "too good to be true" are in fact genuine before he offers them for sale.

E. **Attorney's fees**

The Court should decline to award attorneys' fees in this case for several reasons. First, Plaintiff has not to date provided any evidence in support of its claim for attorney's fees; Plaintiff should not have the opportunity to try and recapture in attorney's fees what it cannot persuade the Court to award now. Second, argument over the appropriate amount of attorney's fees would likely eclipse the actual amount of attorney's fees. Plaintiff sued *thousands* of parties in this case, and a full and careful assessment of attorneys' fees would require discovery into Plaintiff's entire pre-filing investigation, and then apportionment of that investigation among the Defendants. Further, in assessing attorney's fees the Court would have to consider whether Plaintiff has unclean hands, insofar as Plaintiff's over-reaching asset freeze order placed Defendants in an untenable position; had Plaintiffs not over-reached in their freeze of assets, the parties would have likely settled for a figure consistent with the $7,440 Mr. Zhu advocates to be the appropriate award here.

Throughout this case, Mr. Zhu has sought to handle these proceedings as efficiently as possible. Mr. Zhu offered to settle this case for $2,500 – about eight times the total value of his U.S. sales of counterfeit goods – in January. Mr. Zhu has, over time, increased that settlement

13

offer to $11,000, despite the increased legal fees that Mr. Zhu also incurred. Mr. Zhu has stipulated to liability and willfulness in order to focus solely on the question of damages. Plaintiff, on the other hand, has consistently tied its settlement demands not to the facts of the case, but to the amount of funds it improperly froze. To the extent Plaintiff was require to expend fees directed *specifically* at Mr. Zhu, those expenditures are the result of Plaintiff's overreaching.

### III. CONCLUSION

Though Defendant does not contest that he sold counterfeit goods, or that he did so willfully, Plaintiff's demand for $150,000 in statutory damages is more than *four hundred times* the total *revenue* that is at issue in this case. Statutory damages is not a license for plaintiffs to reap windfalls. Statutory damages exist to provide Courts flexibility in assessing damages, in the event the evidence is lacking *due to actions of the Defendant*. Here, Mr. Zhu has fully cooperated with Plaintiff's investigation,[2] and there is no reasonable doubt that the records provided by PayPal are complete records of the sales of counterfeit goods. There is little reason to stray from those records as a basis for awarding statutory damages in this case. To the extent Plaintiff seeks attorneys' fees, Plaintiff has unclean hands because of its unlawful seizure of financial accounts that Plaintiff's counsel knew full well had nothing to do with the alleged counterfeit goods.

---

[2] Tellingly, Plaintiff has never asked Mr. Zhu to identify who supplied him with the counterfeit goods in question, revealing that Plaintiff's true motive here is squeezing small players for cash, instead of finding the source of the counterfeit goods.

Dated this 20th. day of May, 2015.    Respectfully submitted,

**Robins & Associates, LLC**

/s/ **Michael J. Robins**
One of the attorneys for defendant
Robins & Associates, LLC
33 N. Dearborn, Suite 502
Chicago, IL  60602
(312) 641-9500
ARDC: 6200303

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of May, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.