IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LUXOTTICA USA LLC,**<br><br>        **Plaintiff,**<br><br>        v.<br><br>**THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",**<br><br>        **Defendants.** | **Case No. 14 c 9061**<br><br>**Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

This case arises from the unauthorized sale of counterfeit Ray-Ban eyewear through various online seller accounts. Default judgment has been entered against most Defendants, while others have been voluntarily dismissed. A single Defendant ("Defendant"), who has been identified by two eBay seller IDs, remains.

Before the Court is Plaintiff Luxottica USA LLC's ("Luxottica") Motion for Summary Judgment, Statutory Damages of $450,000, Permanent Injunction, and Attorneys' Fees and Costs [ECF No. 77]. For the reasons stated herein, Luxottica's Motion is granted, except that the Court awards statutory damages in the amount of $150,000.

## I. BACKGROUND

Luxottica is the exclusive wholesale distributor of genuine Ray-Ban products in the United States and holds the exclusive right to enforce RAY-BAN trademarks within the United States. (Joint Stmt. of Stipulated Facts, ECF No. 75, ¶1.) RAY-BAN marks have been used continuously and exclusively by Luxottica and its predecessors since as early as 1937. (*Id.* ¶3.) Luxottica has protected the value of the Ray-Band brand by registering the following trademarks with the United States Patent and Trademark Office: Reg. No. 1,080,886, Reg. No. 1,320,460, Reg. No. 3,522,603. (*Id.* ¶1.)

Defendant stipulates that up until November 2014, it sold and offered for sale knockoff products featuring counterfeit RAY-BAN trademarks via online marketplace accounts associated with the eBay seller IDs "g7178a" and "qhgypchyh2." (*Id.* ¶¶5–8.) (The introductory paragraph of the parties' joint statement of stipulated facts refers to the seller IDs as "g7178" and "qhgypchyh.") Defendant has stipulated to owning the online marketplace accounts associated with these seller IDs, as well as seven PayPal accounts associated with various email addresses. (*Id.* ¶4.) Defendant sold at least 106 counterfeit Ray-Ban products at prices ranging from $6.29 to $6.99 each. (*Id.* ¶5.)

## II. ANALYSIS

Luxottica requests that this Court (1) enter summary judgment in its favor on the two claims asserted against Defendant, (2) award statutory damages of $450,000 pursuant to 15 U.S.C. § 1117(c), (3) enter a permanent injunction against Defendant and transfer to Luxottica all assets currently restrained in PayPal accounts that are connected to Defendant, and (4) award attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a)–(b).

### A. Summary Judgment

Luxottica argues that it is entitled to summary judgment on its claims for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.* Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Defendant has already admitted liability on the above-mentioned counts in a Joint Statement of Stipulated Facts filed with the Court on April 7, 2015. (ECF No. 75 ¶¶6–8 ("Defendant knowingly and willfully offered for sale and sold at least one hundred six (106) Counterfeit Ray-Ban Products. . . . Defendant admits liability for false designation of origin using counterfeit trademarks and violation of the Illinois Uniform Deceptive Trade Practices

Act.").) Summary judgment is therefore entered in favor of Luxottica.

**B. Statutory Damages**

Luxottica seeks a total damages award of $450,000 — $150,000 for each of the three trademarks that Defendant used on the counterfeit products. Defendant argues that statutory damages of no more than $7,440 are appropriate because it generated only $800 in total revenue from the sale of the counterfeit goods, and only a fraction of that amount within the United States.

Under 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to recover an award of statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" or, in the case of willful infringement, "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." Although the Lanham Act permits a plaintiff to choose either actual or statutory damages, statutory damages are "most appropriate" when an infringer's nondisclosure makes actual damages uncertain. *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F.Supp.2d 161, 165 (S.D.N.Y. 1999).

Though § 1117(c) places a dollar range on possible statutory damages awards, the statute provides no guidance on

how to select a figure within that range. *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, No. 03 C 4986, 2004 WL 2534378, at *4 (N.D. Ill. Nov. 8, 2004). Accordingly, "[c]ourts interpreting section 1117(c) have looked by analogy to case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c)." *Id.*

The Seventh Circuit's standard for the award of statutory damages in copyright infringement cases is set forth in *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under *Chi-Boy*, "district courts enjoy wide discretion in awarding fees and may consider various factors such as [1] the difficulty or impossibility of proving actual damages, [2] the circumstances of the infringement, and [3] the efficacy of the damages as a deterrent to future copyright infringement." *Id.* at 1229-30 (citation and internal quotations omitted). Courts have also considered the value of a plaintiff's brand, "and the efforts taken to protect, promote, and enhance that brand." *Lorillard*, 2004 WL 2534378, at *6. Ultimately, § 1117(c) looks to both "compensatory considerations" such as "actual losses and trademark value," as well as "punitive considerations" such as "deterrence of other infringers and redress of wrongful defense conduct." *Sara Lee*, 36 F.Supp.2d at 165; *see also, Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1347 (7th Cir. 1994) (noting that statutory damages under § 1117(c) are not

merely remedial but serve an important public interest), *modified on reh'g in part,* 44 F.3d 579 (7th Cir. 1995).

The Court turns first to compensatory considerations. Although there is "no necessary mathematical relationship between the size of [a statutory damages award] and the extent or profitability of the defendant's wrongful activities," *Sara Lee,* 36 F.Supp.2d at 165, statutory damages must "bear some relation" to actual damages, *Coach, Inc. v. Tom's Treasure Chest,* No. 2:10-CV-00243, 2011 WL 4399355, at *3 (N.D. Ind. Sept. 21, 2011) (citation and internal quotations omitted). Courts may look to the size and scope of a defendant's operations to determine a baseline for damages. *Id.* High statutory damages may be appropriate when counterfeiting activities take place online and are capable of reaching a wide audience. *Id.*

Here, Defendant argues that "the parties have a complete record of *all* the sales of the accused products" — namely, PayPal records documenting Defendant's sales, which totaled approximately $800 worldwide and $372 in the United States. (Def.'s Resp., ECF No. 82, at 11.) Plaintiff counters that Defendant's evidence — which was submitted without a declaration — is unauthenticated and contains contradictory information. For instance, the figures displayed on the webpages for Defendant's eBay storefronts indicate that Defendant sold more

than 200 pairs of sunglasses, (*see,* Ex. 2 to Joint Stmt. of Stipulated Facts, ECF No. 75-2), but the PayPal figures Defendant submits show only 106 pairs of sunglasses sold. (Def.'s Resp., ECF No. 82, at 5.) While the parties dispute the exact sales figures, no evidence submitted suggests that Defendant is a large-scale counterfeiter. For instance, all seven PayPal accounts that have been "connected" to Defendant contain only $75,000. (*See, id.* at 2-3.)

On the other hand, Defendant's counterfeiting took place on the Internet, enabling Defendant to reach a "vast customer base," *Burberry Ltd. & Burberry USA v. Designers Imports, Inc.,* No. 07 CIV. 3997 (PAC), 2010 WL 199906, at *10 (S.D.N.Y. Jan. 19, 2010), and making Luxottica's actual losses difficult to calculate, *Brown v. Walker,* No. 1:06-CV-218, 2010 WL 2346242, at *7 (N.D. Ind. May 25, 2010), *report and recommendation adopted as modified,* No. 1:06-CV-218-TLS, 2010 WL 2346225 (N.D. Ind. June 9, 2010). In cases involving the online sale of counterfeit goods, courts have found substantial damages awards appropriate. *See, e.g., id.* (awarding $50,000 per mark); *Burberry,* 2010 WL 199906, at *10 (awarding $100,000 per mark); *Deckers Outdoor Corp. v. Does 1-55,* No. 11 C 10, 2011 WL 4929036, at *5 (N.D. Ill. Oct. 14, 2011) (awarding $750,000 per mark). In this case, the Court has already awarded damages of

$2 million against each defaulting Defendant. (*See,* ECF No. 65 ¶4.)

In addition, the RAY-BAN marks are well known and highly valuable. As noted, Luxottica and its predecessors have used the RAY-BAN marks continuously and exclusively since as early as 1937, and the marks at issue in this lawsuit are all federally registered. Luxottica submits that it has expended significant resources in promoting the Ray-Ban brand, making Ray-Ban the "undisputed world leader in the field of sun and prescription eyewear." (Pl.'s Mem., ECF No. 78, at 10.) Luxottica has also filed numerous lawsuits within this District in an effort to protect the RAY-BAN marks and their associated goodwill. (*See, id.* at 11 n.6.)

The Court now turns to punitive considerations. "[P]art of the purpose of statutory damages is to deter the current violator and other potential future violators." *Lorillard,* 2004 WL 2534378, at *6. Damages awards limited to lost profits are typically ineffective deterrents because "[a] counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners." *Id.* Here, Defendant has stipulated that it engaged in willful infringement. However, Defendant has also mitigated the degree of willfulness by ceasing the sale of the counterfeit products immediately, retaining an attorney, and voluntarily providing information to Luxottica.

Because this is not a case of default, and based on the mitigating factors identified above, the Court finds it appropriate to reduce the statutory damages Luxottica seeks by two-thirds. Pursuant to 15 U.S.C. § 1117(c), the Court awards Luxottica statutory damages in the amount of $50,000 per mark, for a total award of $150,000.

### C. Permanent Injunction

Luxottica seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116(a), which enables district courts to grant injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable." A plaintiff seeking a permanent injunction must demonstrate the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006); *accord e360 Insight v. The Spamhaus Project,* 500 F.3d 594, 604 (7th Cir. 2007).

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001). As this Court recognized in granting

Luxottica's Motion for a Temporary Restraining Order and Preliminary Injunction, counterfeiting has eroded consumer goodwill in the RAY-BAN trademarks and constitutes irreparable harm for which there is no adequate remedy at law. Further, because Defendant's conduct was willful, the balance of hardships favors Luxottica. *See, Bulgari, S.p.A. v. Partnerships & Unincorporated Associations Identified On Schedule "A"*, No. 14-CV-4819, 2014 WL 3749132, at *6 (N.D. Ill. July 18, 2014), *report and recommendation adopted,* No. 14 CV 4819, 2014 WL 3765854 (N.D. Ill. July 29, 2014). The public interest also favors Luxottica, because "enforcement of the trademark laws prevents consumer confusion," *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000), and consumers have a legitimate "interest in knowing with whom they do business." *Re/Max N. Cent.*, 272 F.3d at 433.

As part of the injunction, Luxottica seeks the immediate transfer of "all assets in financial accounts operated by PayPal, Inc. and linked to Defendant, as well as any newly discovered assets, to Luxottica." (Pl.'s Mem., ECF No. 78, at 12.) In granting Luxottica's Motion for Preliminary Injunction, the Court previously froze assets held in accounts "connected" to Defendant on the basis that Luxottica sought an accounting of profits as an alternative to statutory damages. *See, CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir. 2002)

(upholding asset freeze where plaintiff sought accounting in the alternative to statutory damages). Now, relying on the PayPal records, Defendant argues that the asset freeze is too broad, sweeping up accounts "wholly unrelated to the accused products." (Def.'s Resp., ECF No. 82, at 8.) Defendant urges the Court to scale back the asset freeze to $7,440, an amount it contends is "more than adequate to satisfy the Court's interests in preserving any equitable accounting of profits." (*Id.* at 10.)

In arguing that the asset restraint should be modified, Defendant relies on *Klipsch*. In *Klipsch*, after a preliminary injunction hearing in which a defendant submitted evidence that it had only sold a few thousand dollars' worth of counterfeit goods, a court reduced a prejudgment asset restraint from $2 million to $20,000. *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 CIV. 6283 AJN, 2012 WL 5265727, at *3 (S.D.N.Y. Oct. 24, 2012). The court held that, under the Supreme Court's ruling in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), asset freezes are limited to preserving the equitable remedy of an accounting for profits. *Klipsch,* 2012 WL 5265727, at *3.

To exempt assets from an asset freeze, "[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05

CIV. 9083 (RMB), 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006) (citation and internal quotations omitted). Defendant claims that only two of Defendant's seven PayPal accounts contain any profits related to the sale of counterfeit Ray-Ban goods. In support of this argument, Defendant has submitted a spreadsheet of transactions associated with one of Defendant's email addresses, as well as an untranslated Chinese email. (*See,* Exs. K & L to Def.'s Resp., ECF No. 82-1.) To rule out the five remaining accounts, Defendant has submitted PayPal account summaries it claims show no connection to the eBay Seller IDs "g7178a" and "qhgypchyh2." (*See,* Exs. C-I to Def.'s Resp., ECF No. 82-1.) Defendant has also provided several hundred pages of eBay feedback ratings associated with the two seller IDs, showing that it sold a variety of products in addition to sunglasses. (*See,* Ex. N to Def.'s Resp., ECF No. 82-1.)

Luxottica, however, disputes the authenticity and validity of this evidence. For instance, Luxottica notes that the evidence was not accompanied by a declaration, that the transaction spreadsheet does not identify the quantity of glasses sold, and that Defendant's sales figures contradict information displayed on the eBay storefronts. Despite Defendant's contention that it is unconnected to five of the seven PayPal accounts, Defendant has admitted to owning the PayPal accounts associated with the email addresses shown in the

account summaries. (Joint Stmt. of Stipulated Facts, ECF No. 75, ¶5.) Luxottica submits that the restraint on these accounts "was based on PayPal, Inc.'s . . . determination through PayPal's proprietary methods, which have not been disclosed to Luxottica or Luxottica's counsel." (Gaudio Decl, Ex. 1 to Pl.'s Reply, ECF No. 84-1, ¶ 2.)

The Court cannot conclude, based on the evidence before it, that Defendant has met its burden in showing that the asset restraint should be limited to only a portion of two of the seven PayPal accounts and declines to modify the asset restraint on this basis.

### D. Attorneys' Fees and Costs

Finally, Luxottica seeks an award of attorneys' fees and costs. As the prevailing party, Luxottica is entitled to costs under Federal Rule of Civil Procedure 54(d)(1). Under 15 U.S.C. § 1117(a), which addresses recovery in terms of profits and actual damages, a court may, "in exceptional cases . . . award reasonable attorney fees to the prevailing party." Exceptional cases include those in which a defendant's conduct is willful. *BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1099 (7th Cir. 1994). In assessing damages under § 1117(a), courts "shall" award attorneys' fees, absent extenuating circumstances, in cases involving the intentional use of a counterfeit mark. 15 U.S.C. § 1117(b). An award of attorneys' fees is available

where, as here, a plaintiff "opt[s] to receive statutory damages under section 1117(c)." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012); *accord Coach, Inc. v. Treasure Box, Inc.*, No. 3:11CV468-PPS, 2014 WL 888902, at *5 (N.D. Ind. Mar. 6, 2014). Accordingly, and in light of Defendant's willful counterfeiting, Luxottica is awarded reasonable attorneys' fees and costs in an amount to be determined by the Court.

### III. CONCLUSION

For the reasons stated herein, Luxottica's Motion for Summary Judgment and Statutory Damages is granted in part and denied in part.

The Court enters summary judgment in favor of Luxottica and against Defendant. Pursuant to 15 U.S.C. § 1117(c), the Court awards Luxottica $150,000 in statutory damages. The Court also awards Luxottica reasonable attorneys' fees and costs, and will enter a permanent injunction prohibiting Defendant from violating Luxottica's rights in the RAY-BAN marks.

Within seven (7) days of the entry of this order, Luxottica shall submit a revised Final Judgment Order consistent with this opinion. The parties are to attempt to reach an agreement on the issue of attorneys' fees in accordance with Local Rule 54.3. If an agreement cannot be reached, Luxottica is to file a Motion

for Attorneys' Fees within thirty (30) days of the entry of this Order.

**IT IS SO ORDERED.**

						  _____
						  Harry D. Leinenweber, Judge
						  United States District Court

Dated: June 18, 2015